UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61148-RUIZ/STRAUSS

**MICHAEL SILVER,**

    Plaintiff,

v.

**CITY OF PEMBROKE PINES,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant, City of Pembroke Pines' Motion to Dismiss Plaintiff's Complaint ("Motion") [DE 7]. The Motion has been referred to me to take all necessary and proper action as required by law [DE 19]. I have reviewed the Motion, the Response [DE 16] and Reply [DE 17] thereto, the Complaint [DE 1], and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

## BACKGROUND

Plaintiff is a homosexual, Jewish man who is employed by Defendant as a police officer. Complaint [DE 1] ¶¶ 4, 11. He had been promoted to detective in 2012, but he was demoted back to police officer around December 2019. *Id.* ¶¶ 11, 28. In Counts I-IV of the Complaint, Plaintiff alleges discrimination claims, based on his sex and religion, under Title VII of the Civil Rights Act of 1964 and under the Florida Civil Rights Act ("FCRA"). In Counts V-VI, he alleges retaliation claims under Title VII and the FCRA.

During his time as a detective, Plaintiff worked in the Special Victims Unit (SVU) and was also assigned as a task force officer to the South Florida Internet Crimes Against Children

Taskforce (ICAC), which he was instrumental in creating. *Id.* ¶¶ 12, 15. He accumulated a variety of awards and accolades due to his service. *Id.* ¶ 15. Plaintiff also developed expertise in the area of cyber-crimes involving child exploitation. *Id.*

In 2018, the command staff of Defendant's police department underwent several personnel changes. *Id.* ¶ 16. The new command staff talked down to and criticized Plaintiff. *Id.* ¶ 17. In fall of 2018, Major Stasio questioned the merit of an award given to Plaintiff by an outside organization and criticized and reprimanded Plaintiff for having tattoos that had been prohibited by department policy instituted after Plaintiff was hired. *Id*. ¶18. In May 2019, Plaintiff raised concerns regarding an investigation to Sergeant Goodwin, who then accused Plaintiff of violating "general orders." *Id.* ¶ 19. Shortly thereafter, Plaintiff met with Sergeants Goodwin and Lopez, who accused him of being disrespectful and of failing to properly do his job. *Id.* ¶ 20. The accusations include criticism of Plaintiff failing to timely respond to text messages while he was off duty or not on call, despite Plaintiff's contract not obligating him to respond to such messages while off duty or not on call. *Id*. Plaintiff walked out of the meeting because he did not want to continue without legal representation, which he was entitled to under the policeman's bill of rights. *Id*. Prior to Plaintiff walking out, Sergeant Goodwin told Plaintiff he would regret it if he walked out. *Id.*

In June 2019, Defendant began assigning officers to Plaintiff's unit even though they expressed that they did not want to do the emotionally-taxing work of child exploitation cases. *Id.* ¶ 21. Major Stasio and Captain Caris indicated that they were happy with Plaintiff's work product and that his position was safe. *Id*. ¶ 22. Plaintiff informed Major Stasio and Captain Caris that forcing officers to investigate cases involving the viewing of child sexual abuse violated ICAC national standards and that such investigations required knowledge of technology platforms. *Id*.

Major Stasio responded that detectives unable or unwilling to investigate such cases could return to road patrol. *Id*. Sometime in June 2019, Major Stasio expressed concern and embarrassment that Plaintiff was the only detective capable of investigating cyber-crimes. *Id*. ¶ 23. Despite Plaintiff voluntarily developing training plans to teach other officers to investigate such cases, Defendant never accepted his offer to conduct the training. *Id*. ¶¶ 23-24.

Next, in October 2019, Sergeant Goodwin expressed concern regarding the number of overtime hours Plaintiff was working. *Id*. ¶ 26. Consequently, Defendant revised its overtime policy to limit Plaintiff's overtime hours. *Id*.

At a union meeting in late October 2019, "Plaintiff publicly expressed concern that he believed that he was being targeted and discriminated against," asserting that "he felt as though he was being treated differently." *Id*. ¶ 27. Then, on November 21, 2019, Sergeant Goodwin and Captain Carris informed Plaintiff he was "no longer a good fit" for the SVU and would be transferred (demoted) to the patrol division, effective December 24, 2019. *Id*. ¶ 28. At the time, Plaintiff had received only positive annual evaluations. *Id*. ¶¶ 15, 25. On December 12, 2019, after an unsatisfactory meeting with the Chief of Police and after Plaintiff's separate request to transfer to a different detective position (instead of road patrol) was denied, Plaintiff filed a Charge of Discrimination with the EEOC (later amending the charge in October 2020). *See id*. ¶¶ 29-31.

Following his demotion, Plaintiff encountered other instances of criticism or treatment that he alleges were either unwarranted, unfair, or contrary to department practice. These instances included: being required to continue investigating active SVU investigations despite being reassigned to road patrol (*Id*. ¶ 32); being criticized for being "snarky and unprofessional" in certain emails (*Id.*); being questioned about not paying tolls while driving a marked vehicle (*Id*. ¶ 34); Defendant declining to issue a press release on one of Plaintiff's arrests (*Id*. ¶ 37); being yelled

at, with other officers, for congregating at a 7-Eleven (*Id*. ¶ 38); being told to not assist the FBI with an arrest (*Id*. ¶ 39); being accused of poor judgment, not updating his command, and improperly arranging a self-surrender at the station, despite the fact that Plaintiff had emailed his command at every step of the process (*Id*. ¶¶ 41-44); after being placed on "light duty" post-surgery, being required to check the temperatures of station entrants, rather than working from home (*Id*. ¶ 53); and Sergeant Goodwin adding negative comments to his annual evaluation after his current supervisors submitted the evaluation with high praise (*Id*. ¶¶ 48, 50).

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679)).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must accept the factual allegations in the complaint as true and view them in the light most

favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citation omitted). *See also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

### I.  DISCRIMINATION (COUNTS I-IV)[1]

Counts I-IV fail to plausibly allege that Defendant discriminated against Plaintiff based on his sex or religion. Under Title VII, "it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)(1)). The FCRA similarly prohibits such discrimination. *See* § 760.10(1)(a), Fla. Stat. To state a Title VII discrimination claim based on religion or sex, "a complaint need only provide enough factual matter (taken as true) to suggest intentional [] discrimination" based on religion or sex. *Powers v. Sec'y, U.S. Homeland Sec.*, 846 F. App'x 754, 758 (11th Cir. 2021) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)) (internal quotation marks omitted). Of

---

[1] "Claims under the FCRA are analyzed in the same way as Title VII claims." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 300 (11th Cir. 2020) (citing *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004)). *See also Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) ("We and other Florida districts have recognized that the FCRA is patterned after Title VII and that federal case law on Title VII applies to FCRA claims." (cleaned up) (citations omitted)).

course, a complaint must *plausibly* suggest such discrimination caused an adverse employment action. *Lewis v. Fulmer*, No. 20-11906, 2021 WL 3673910, at *1 (11th Cir. Aug. 19, 2021); *Henderson v. City of Birmingham, Ala.*, 826 F. App'x 736, 740-41 (11th Cir. 2020); *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018); *Surtain*, 789 F.3d at 1246. Nonetheless, at the pleading stage, a plaintiff is not required to plead the elements of a prima facie case under *McDonnell Douglas*[2] – this prima facie case requirement is an evidentiary standard, not a pleading standard. *Powers*, 846 F. App'x at 758 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002); *Surtain*, 789 F.3d at 1246).

Still, though, a plaintiff should not lose sight of what he must ultimately prove at trial as that guides what the plaintiff must plausibly allege at the outset. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or statistical proof." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (quoting *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008)). Here, the Complaint certainly does not suggest, plausibly or otherwise, a hint of direct or statistical evidence.

But the Complaint also does not plausibly allege that any circumstantial evidence suggests intentional discrimination based on sex or religion. Defendant primarily argues that the Complaint does not allege any nexus between Plaintiff's sex or religion and Plaintiff's demotion. [DE 7] at 2. In other words, Defendant contends that "[t]he facts alleged in the Complaint do not create an inference of discrimination based on Plaintiff's sex or religion." *Id.* at 8. I agree. Viewed in the light most favorable to Plaintiff, the allegations of the Complaint show that Defendant acted in an unfairly harsh manner towards Plaintiff. It is certainly conceivable that Defendant treated Plaintiff

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6

harshly – and, more importantly for purposes of Plaintiff's discrimination claim, demoted him – because of his sexual orientation or religion. But it is equally conceivable that Defendant was harsh towards Plaintiff for any number of other reasons. In other words, maybe Defendant acted as it did because of Plaintiff's protected status, or maybe Defendant's treatment of Plaintiff had nothing to do with Plaintiff's protected status. The problem is that the Complaint does not provide facts that indicate whether it was the former or the latter. Simply stated, the factual allegations do not plausibly indicate that Defendant discriminated against Plaintiff *because of* Plaintiff's sexual orientation or religion. Additionally, as discussed below, the Complaint fails to plausibly allege that any similarly situated comparators outside of Plaintiff's protected class were treated more favorably than Plaintiff.

In his Response, Plaintiff initially recognizes that he is not required to establish a prima facie case under *McDonnell Douglas* at the pleading stage, but he proceeds to explain why he believes he has demonstrated a prima facie case. Aside from the prima facie case context, though, Plaintiff does not otherwise explain how the allegations of the Complaint *plausibly* suggest discrimination on account of Plaintiff's *sex or religion*. *See* [DE 16] at 6-11.

Since Plaintiff argues he has stated a claim in Counts I-IV by establishing a prima facie case under *McDonnell Douglas* and does not specifically argue that he has stated a claim in any other manner, I will consider whether he has established a prima facie case.[3] Establishing a prima facie case requires showing that: (1) Plaintiff "belongs to a protected class," (2) Plaintiff "was subjected to an adverse employment action," (3) Plaintiff "was qualified to perform the job in

---

[3] Even if Plaintiff had not focused his argument on whether he established a prima facie case, and even though a prima facie case is not required in a pleading, "it can [still] be 'helpful to reference' [the *McDonnell Douglas*] framework when [a] court is determining whether a plaintiff has plausibly alleged the ultimate elements of [a] disparate treatment claim." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citation omitted).

question," and (4) Defendant "treated 'similarly situated' employees outside [Plaintiff's] class more favorably." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019).

The allegations of the Complaint clearly satisfy the first three prima facie case requirements but not the fourth. With respect to the fourth element, for two employees to be "similarly situated," they must be "similarly situated in all material respects." *Id.* at 1226. Ordinarily, a similarly situated comparator: (1) "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "will have been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) will generally "have been under the jurisdiction of the same supervisor as the plaintiff"; and (4) "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28. "In short, as its label indicates – 'all material respects' – a valid comparison will turn not on formal labels, but rather on substantive likenesses." *Id.* at 1228. Stated differently, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* (citation omitted).

Although the Complaint alleges that certain other employees received more favorable treatment than Plaintiff, it does not contain sufficient facts to show whether those employees were similarly situated to Plaintiff or whether they were outside of Plaintiff's protected class. Plaintiff contends that Detectives Lopez, Perez, and Wilks were treated more favorably than he was treated, [DE 16] at 10-11, and the Complaint provides at least some indication that they were. *See* Complaint ¶¶ 30, 32, 46. However, the Complaint fails to include any factual allegations to show how any of the three detectives were similarly situated to Plaintiff (if at all). Nor does it allege that they are non-Jewish or heterosexual. Therefore, the Complaint does not plausibly allege that the fourth prima facie case requirement is satisfied. *Cf. Uppal v. Hosp. Corp. of Am.*, 482 F. App'x

8

394, 396 (11th Cir. 2012) (finding employee failed to allege facts to support discrimination claim because she did not allege how comparator employees were outside her protected class).

For the foregoing reasons, Plaintiff has "not nudged [his discrimination] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. He has not plausibly alleged a prima facie case under *McDonnell Douglas* or otherwise plausibly alleged that Defendant discriminated against him "because of" his sexual orientation or religion. Therefore, Counts I-IV should be dismissed.

## II. RETALIATION (COUNTS V-VI)[4]

Counts V and VI fail to plausibly allege a retaliation claim. Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by" Title VII, "or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). *See also Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). The FCRA likewise prohibits such retaliation. *See* § 760.10(7), Fla. Stat. "To state a retaliation claim, a plaintiff must plausibly allege (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Little v. CSRA, Inc.*, 834 F. App'x 495, 499 (11th Cir. 2020) (citing *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012)). *See also Stewart v. Jones Util. & Contracting Co..*, 806 F. App'x 738, 742 (11th Cir. 2020).

In both Counts V and VI, Plaintiff alleges that he "engaged in the protected activity of reporting the discrimination." Complaint ¶¶ 108, 113. The Complaint reveals two potential

---

[4] *See supra* note 1.

9

instances in which Plaintiff engaged in protected activity: (1) when Plaintiff expressed concern at a union meeting that he was being targeted and discriminated against, stating he felt he was being treated differently, *see id.* ¶ 27; and (2) when Plaintiff filed his EEOC charge, *see id.* ¶ 31. The second instance – the filing of the EEOC charge – unquestionably qualifies as protected activity. However, the first instance – Plaintiff's remarks at the union meeting – only *possibly* qualifies as protected activity. There are simply insufficient facts alleged regarding Plaintiff's remarks at the union meeting to *plausibly* show that Plaintiff engaged in protected activity. For instance, Plaintiff's alleged remarks do not reveal any opposition to an "unlawful employment practice." In other words, while it is unlawful for an employer to discriminate against an individual due to his "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), Plaintiff's remarks at the union meeting, as alleged in the Complaint, did not provide any indication that Defendant was discriminating against him based upon any of the foregoing. Therefore, such remarks do not constitute protected activity as presently alleged.[5]

Nonetheless, the first retaliation element (protected activity) is satisfied because of the EEOC charge. The second element (materially adverse action) is also satisfied because Plaintiff was demoted – it is Plaintiff's demotion that is alleged to be the materially adverse employment action in Counts V and VI. *See* Complaint ¶¶ 108, 113 ("Defendant retaliated against [Plaintiff] by continuing and intensifying the discrimination and ultimately demoting the Plaintiff.").[6] The problem for Plaintiff, however, lies with the third element. The Complaint does not plausibly

---

[5] Even if protected activity, there is a causal connection issue because the Complaint does not allege that the decisionmaker was aware of Plaintiff's remarks at the union meeting. *See Uppal*, 482 F. App'x at 397 (affirming dismissal of retaliation claim where plaintiff did not allege that decisionmaker was aware of alleged protected activity).

[6] Notably, the Complaint does not allege, and the Response does not argue, that any of the post-demotion events described in ¶¶ 32-53 constitute "adverse employment actions" for purposes of retaliation.

allege a causal connection between the EEOC charge and Plaintiff's demotion. Nor does it reveal that there could plausibly be a causal connection between the two given that the Complaint clearly alleges Plaintiff's demotion was decided upon and announced before the EEOC charge was filed.[7] It is simply implausible (if not impossible) for A to cause B when B occurs before A. *See Uppal*, 482 F. App'x at 397 ("[A]ccording to her complaint, Dr. Uppal had already lost her emergency room (ER) privileges *prior* to sending the July 2008 letter. Therefore, this initial loss of ER privileges cannot be causally related to Dr. Uppal's July 2008 letter."). Therefore, Counts V and VI should be dismissed.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** the Motion [DE 7].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

---

[7] In his Response, Plaintiff contends that he "suffered harm by not being offered a transfer to a detective position (or even the opportunity to interview for such a position)." [DE 16] at 12. However, that was not the adverse employment action alleged in Counts V and VI, and a party may not amend a complaint through briefing on a motion to dismiss. *See Baker v. Warner/Chappell Music, Inc.*, No. 14-22403-CIV, 2017 WL 4310750, at *8 (S.D. Fla. Sept. 28, 2017). Regardless, like Plaintiff's demotion decision, this inability to transfer to or interview for a detective position occurred before Plaintiff's EEOC charge was filed, *see* Complaint ¶¶ 30-31, meaning that the EEOC charge could not have caused the harm Plaintiff complains of in his Response.

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 5th day of September 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge